IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SULTAN STEPHON BURNS,<br><br>                    Plaintiff,<br><br>vs.<br><br>M. MIRANDA,<br><br>                    Defendant. | Case No. 3:20-cv-00227-JMK<br><br>**ORDER GRANTING DEFENDANT SUMMARY JUDGMENT** |

Pending before the Court are cross-motions for summary judgment from Plaintiff Sultan Stephon Burns[1] and Defendant M. Miranda (Superintendent Miranda).[2] The Court, having considered the parties' briefing and the record, GRANTS Superintendent Miranda's Motion, as explained below.

## I. BACKGROUND

Mr. Burns brings this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights, namely his First Amendment rights, were violated by Superintendent

---

[1] Docket 21.
[2] Docket 27.

Miranda.[3] Mr. Burns is a prisoner at Spring Creek Correctional Center (SCCC) in Seward, Alaska.[4]

Mr. Burns was terminated from his employment as a mentor in the mental health unit (referred to as "Echo Mod") at SCCC on April 1, 2020.[5] Ten days before his termination, on March 22, 2020, Mr. Burns submitted a prisoner grievance alleging that Correctional Officer (CO) Gicewicz had stolen a brown paper bag of popcorn kernels from the mental health unit.[6] Mr. Burns' grievance was investigated and treated as a personnel issue and Mr. Burns did not learn the outcome or any potential consequences of his report.[7]

On April 1, 2020, having learned he had been terminated from his position in the mental health unit, Mr. Burns filed a request for an interview with Superintendent Miranda to discuss his termination.[8] Superintendent Miranda noted in response that she reviewed the "Echo Mod Mentor Program" and "determined that [she] no longer required [Mr. Burns'] employment as a mentor" in the program.[9]

On April 21, 2020, Mr. Burns filed a grievance related to his termination.[10] In his grievance Mr. Burns noted that another correctional officer had told him he had been terminated due to the results of his Prison Rape Enforcement Act (PREA) assessment, which categorized him as a potential aggressor.[11] The grievance indicated Mr. Burns'

---

[3] Docket 1.
[4] *Id.*
[5] *Id.* at 3.
[6] Docket 21-3 (Plaintiff's Exhibit 1).
[7] *See* Docket 21-3, "Investigator's Findings and Recommendations."
[8] Docket 21-5.
[9] *Id.*
[10] Docket 21-6.
[11] *Id.*

*Burns v. Miranda* Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment Page 2
Case 3:20-cv-00227-JMK Document 40 Filed 09/21/21 Page 2 of 16

belief that his PREA assessment was irrelevant as a matter of policy to his work as a mentor, and that he believed the other three mentors to be similarly assessed as potential aggressors.[12] Mr. Burns' grievance was screened out on April 29, 2020, by the Facilities Standards Officer, who noted that the grievance did not state a "law, regulation, policy, SOP, or handbook rule" that was violated when Mr. Burns was terminated.[13]

Mr. Burns requested an interview and appealed the Facilities Standards Officer's screening determination the day it was issued.[14] At that time, he believed his termination was the product of discrimination on the basis of his criminal history, because he was serving time in prison for crimes involving domestic violence.[15] Mr. Burns' appeal was denied the following day.[16]

On May 2, 2020, Mr. Burns filed another grievance related to his termination as a mentor.[17] He alleged that his termination had been retaliation for his previous grievance against CO Gicewicz.[18] Mr. Burns cited Department of Corrections (DOC) policy 808.04 for his contention that due process rights attached to his position as a mentor in the mental health unit at the SCCC.[19] Mr. Burns' grievance again was screened out by the Facility Standards Officer as "factually incredible or clearly devoid of merit," without further comment, on May 7, 2020.[20]

---

[12] *Id.*
[13] Docket 21-7.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Docket 21-9.
[18] *Id.*
[19] *Id.*
[20] Docket 21-10.

*Burns v. Miranda*     Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment     Page 3
Case 3:20-cv-00227-JMK   Document 40   Filed 09/21/21   Page 3 of 16

When Mr. Burns received the screening determination, he again appealed.[21] Mr. Burns requested that his appeal be sent to the Deputy Director of Institutions at the DOC, arguing that Superintendent Miranda, the Acting Superintendent who served after Superintendent Miranda, and the Facility Standards Officer were not appropriate officials to decide his grievance or appeal.[22] On May 12, 2020, the Acting Superintendent denied his appeal, noting that Mr. Burns' grievance was not a "staff misconduct" complaint and that he had the authority to screen the grievance.[23]

On May 18, 2020, Mr. Burns wrote to the "Grievance and Compliance Admin." alleging that both grievances related to his termination as a mentor in the mental health unit (numbered SC20-103 and SC20-120) were not handled consistent with DOC policies.[24]

On July 13, 2020, the Standards Administrator for the Department of Corrections, with the concurrence of the Director of Institutions, issued a letter in response to correspondence Mr. Burns submitted on April 11, 2020, requesting a Level 3 review of the grievances related to his termination.[25] The Standards Administrator acknowledged that Mr. Burns' underlying grievance should have been elevated to the Director of Institutions at DOC per DOC P&P § 808.03(VII)(A)(2)(e)(1).[26] The Standards Administrator went on to explain, however, that Mr. Burns' PREA Risk Assessment results

---

[21] Docket 21-12.
[22] *Id.*
[23] *Id.*
[24] Docket 21-13.
[25] Docket 21-14.
[26] *Id.*

*Burns v. Miranda*                                                           Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment                         Page 4
Case 3:20-cv-00227-JMK    Document 40    Filed 09/21/21    Page 4 of 16

had been overlooked when he was hired as a mentor in the mental health program.[27] The Administrator determined that when Superintendent Miranda reviewed the results and terminated Mr. Burns based on the determination that he was a "potential aggressor," she was within her discretion to do so.[28] Finally, the Administrator explained that the policy Mr. Burns had referenced at DOC P&P 808.04, entitled "Removal from Rehabilitation and Court-Ordered Treatment Programs" pertains to inmates' removal from participation in such programs, not removal as an employee of the program.[29] Ultimately, the Administrator found the procedural errors related to the handling of Mr. Burns' grievances and appeals to be harmless because his underlying complaint was without merit under DOC policy.[30]

Mr. Burns filed the instant action on September 11, 2020, pursuant to 42 U.S.C. § 1983, again alleging that Superintendent Miranda's termination of him from the mentor position in the mental health program at SCCC was retaliation and a violation of his First Amendment rights.[31]

After initiating proceedings in federal court, Mr. Burns filed another grievance on September 15, 2020.[32] This grievance, numbered SC20-230, references a grievance numbered SC20-218, which Mr. Burns alleged was improperly screened, as well as his termination grievances.[33] Using the letter from the Standards Administrator

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] Docket 1.
[32] Docket 21-17.
[33] *Id.* Grievance SC20-230 was not submitted to the Court.

*Burns v. Miranda*                                                                                     Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment                                   Page 5
Case 3:20-cv-00227-JMK    Document 40    Filed 09/21/21    Page 5 of 16

acknowledging that the termination grievances had been improperly screened, Mr. Burns alleged a pattern of misconduct related to the treatment of staff misconduct grievances and asked that SCCC officials comply with the correct DOC policies in screening future grievances.[34]

In response to grievance SC20-230 the Department of Corrections issued a memorandum from Lieutenant J. Brown reviewing the three grievances Mr. Burns believed to have been improperly processed: SC20-218, SC20-103, and SC20-130.[35] In the memorandum, Lieutenant Brown explains the screening and review process applied to each grievance and the errors made at times by DOC staff.[36] He found that SC20-218 had not been improperly screened, and overall determined that, while more training was necessary to ensure that grievances were appropriately channeled per DOC policy, a pattern of misconduct did not exist in relation to prisoner grievances based on the documentation provided by Mr. Burns.[37]

## II. STANDARD OF REVIEW

Summary judgment is appropriate where, viewing the evidence and drawing all reasonable interference in the light most favorable to the nonmoving party,[38] the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[39] The moving party bears the burden of

---

[34] *Id.*
[35] Docket 21-18.
[36] *Id.*
[37] *Id.*
[38] *Scott v. Harris*, 550 U.S. 372, 378 (2007).
[39] Fed. R. Civ. P. 56(c).

*Burns v. Miranda* Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment Page 6
Case 3:20-cv-00227-JMK Document 40 Filed 09/21/21 Page 6 of 16

establishing the absence of a general dispute of material fact at the outset.[40]  Once this burden is met, the non-moving party must present specific evidence demonstrating the existence of a genuine issue of fact.[41]

A material fact is one that might affect the outcome of the case.[42]  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[43]  Thus, the Court looks to determine whether there is a genuine issue for trial at the summary judgment phase, not to "'weigh the evidence and determine the truth of the matter.'"[44]  The Ninth Circuit "has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."[45]

Where, as here, parties file cross-motions for summary judgment, the Court is obligated to review and consider each motion and the evidence presented in support of each motion on its own accord.[46]  Thus, even where both parties assert there are no uncontested issues of material fact, the Court's responsibility to determine whether a disputed issue of material fact remains.[47]

---

[40] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[41] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).
[42] *Id.* at 248–49 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").
[43] *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[44] *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 115, 1162 (9th Cir. 2016)).
[45] *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).
[46] *Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136–37 (9th Cir. 2001).
[47] *Id.* at 1136.

*Burns v. Miranda* Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment Page 7
Case 3:20-cv-00227-JMK   Document 40   Filed 09/21/21   Page 7 of 16

# III. DISCUSSION

Mr. Burns brings this action pursuant to 42 U.S.C. § 1983, alleging Superintendent Miranda violated his constitutional rights when she terminated him from his role as a mentor in the "Echo Mod" mental health unit at SCCC. Specifically, Mr. Burns asserts that his termination was retaliation for exercising his First Amendment rights by filing a grievance against CO Gicewicz for taking popcorn from the Echo Mod unit.

Prisoner plaintiffs like Mr. Burns retain a First Amendment right to file grievances while incarcerated.[48] "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'"[49] The Ninth Circuit has established five elements of a First Amendment retaliation claim in the prison context.[50] They are:

> (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.[51]

The Court will consider each party's motion in turn, for clarity and to ensure that Mr. Burns' pleadings are fully addressed.

---

[48] *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).
[49] *Id.* (citing *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005); *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)).
[50] *See Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005).
[51] *Brodheim*, 584 F.3d at 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 567–68).

*Burns v. Miranda*  Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment  Page 8
Case 3:20-cv-00227-JMK   Document 40   Filed 09/21/21   Page 8 of 16

### A. Mr. Burns' Motion for Summary Judgment

Mr. Burns submitted a Motion for Summary Judgment that directs the Court to an Affidavit, a "Statement of Undisputed Facts Affidavit," his requests for admissions and production of documents, and exhibits submitted with the Motion.[52] Taken as a whole, Mr. Burns' filings explain his arguments and contain evidence related to his claim. To the extent Defendant has requested the "Undisputed Facts Affidavit" be disregarded by the Court,[53] the Court notes it has not improperly relied on the statements in that Affidavit, nor has it accepted them as wholly "undisputed" without a full review of the record. *Pro se* filings are to be "liberally construed,"[54] and as such the Court has considered all the material submitted by Mr. Burns in construing his Motion for Summary Judgment.

Mr. Burns has submitted evidence and Defendant does not dispute that he was terminated from his job as an Echo Mod mentor. Separately, there is no dispute between the parties that Mr. Burns' grievance against CO Gicewicz was protected conduct. Therefore, the Court will focus its analysis initially on causation—whether Mr. Burns was terminated as a mentor *because* he had recently filed a grievance against CO Gicewicz.

Mr. Burns asserts that his removal from his position as an Echo Mod mentor was retaliation for his grievance against CO Gicewicz regarding the popcorn kernels taken from Echo Mod. To establish causation at summary judgment, that is to show that his removal was the result of retaliation, Mr. Burns "'must show that his protected conduct

---

[52] Docket 21.
[53] Docket 26 at 3.
[54] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

was the 'substantial' or 'motivating' factor behind the defendant's conduct.'"[55] Having provided evidence of such motivation, the burden shifts to Superintendent Miranda to show "'by a preponderance of the evidence that [she] would have' taken the same action 'even in the absence of the protected conduct.'"[56]

Mr. Burns relies primarily on the timing of the two events: his grievance against CO Gicewicz on March 22, 2020, and his termination on April 1, 2020, to show causation.[57] Additionally he relies on Lieutenant Brown's memorandum regarding his various grievances and the screening process applied to them to establish a connection between the two events, noting in his Affidavit that the Lieutenant "agreed with my claim of retaliation."[58]

First, Lieutenant Brown's memorandum, issued on October 18, 2020, did not address Mr. Burns' retaliation claim to the extent he alleges in his affidavit. Lieutenant Brown's memorandum addresses what the Department of Corrections concedes was a mismanagement of his grievance because it did in fact allege retaliation.[59] It does not take the extra step of contemplating whether the retaliation occurred.

Second, timing can be considered circumstantial evidence of retaliation.[60] However, in this instance Mr. Burns has failed to show that Superintendent Miranda was

---

[55] *Riley v. Roach*, 572 Fed. Appx. 504, 506 (9th Cir. 2014) (quoting *Brodheim*, 684 F.3d at 1271) (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)) (internal quotation marks omitted).
[56] *Riley* at 506 (quoting *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Sorranno's Gasco, Inc.*, 874 F.2d at 1314.
[57] Dockets 1 at 3; 23 at 4.
[58] Docket 22 (referencing Docket 21-14).
[59] Docket 21-18.
[60] *Pratt v. Rowland*, 65 F.3d 802, 808 (citing *Soranno's Gasco, Inc.*, 874 F.2d at 1316.

*Burns v. Miranda*  Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment  Page 10
Case 3:20-cv-00227-JMK   Document 40   Filed 09/21/21   Page 10 of 16

aware he had grieved CO Gicewicz when she terminated him a week later. Indeed, Defendant has provided emails and affidavits indicating that not only would the Superintendent have taken the same action in the absence of the protected conduct, for all intents and purposes she *did* take the action in the absence of the protected conduct because she was unaware the protected conduct had occurred.

Defendant's evidence and explanation, provided in her Opposition, sets forth a series of events entirely separate from Mr. Burns' understanding of his termination. A new clinical supervisor was appointed to Echo Mod on March 2, 2020, four days after Mr. Burns grieved CO Gicewicz.[61] That Supervisor was tasked with ensuring that mentors in Echo Mod were suitable for the role, which is one dealing with highly vulnerable inmates.[62] The new supervisor did not have any documentation for the incumbent Echo Mod mentors regarding what assessment previous supervisors had done to ensure the mentors were appropriate hires in Echo Mod, including any PREA status checks.[63]

Four days after the new Supervisor began work in the Echo Mod, she received a pass-through note about a conversation between Mr. Burns and an Echo Mod inmate that the Supervisor found concerning.[64] Mr. Burns also raised the conversation at a mentor meeting with the Supervisor the same day she received the pass-through note.[65] His recounting of the story "raised some red flags" for the Supervisor as to how Mr. Burns

---

[61] Docket 24-3 at 1.
[62] *Id.* at 2.
[63] *Id.* at 3.
[64] *Id.* at 4.
[65] *Id.*

was relating to Echo Mod inmates.[66] Following the meeting, the Supervisor checked Mr. Burns' Alaska Corrections Offender Management System (ACOMS) account and saw a notation that he was a "potential PREA aggressor."[67] At that time, she shared the information with Superintendent Miranda, who, on April 1, 2020, confirmed Mr. Burns' PREA status and asked that he be removed from Echo Mod immediately.[68]

The record Mr. Burns has put before the Court, namely his grievances and prison officials' responses thereto, indicate that it was never clearly communicated to Mr. Burns the reason for his termination from Echo Mod. His initial grievance of the termination indicates he was aware that his PREA assessment was a factor in the termination, but it is unclear who informed him that his PREA status had caused him to lose his job.[69] The Supervisor who identified the issue provided written testimony that she never communicated the issue to Mr. Burns and that he was not aware of her involvement in his termination.[70] It is not hard to understand why, from Mr. Burns perspective, his recent grievance against CO Gicewicz had somehow influenced or even resulted in his termination. However, his lack of knowledge about the Department of Corrections' machinations that lead to his termination is not evidence of causation. Defendant has, by a preponderance of the evidence, shown that Mr. Burns' grievance against CO Gicewicz was not the primary, or even a motivating factor in the decision to terminate Mr. Burns.

---

[66] *Id.*
[67] *Id.*
[68] *Id.*; Docket 24-7.
[69] Docket 21-9.
[70] Docket 24-3 at 5.

Without a causal link between Mr. Burns' protected conduct and Superintendent Miranda's action terminating him as a mentor in Echo Mod, the Court cannot grant summary judgment in Mr. Burns' favor. His Motion for Summary Judgment is DENIED. The Court, for the sake of clarity, considers Defendant's Motion for Summary Judgment and Mr. Burns' Opposition thereto separately below.

**B.      Defendant's Motion for Summary Judgment**

Defendant's Motion for Summary Judgment reiterates the arguments made in its Opposition to Mr. Burns' Motion for Summary Judgment, and relies on those exhibits entered to the record at Docket 21. Specifically, Defendant asserts there is no evidence showing a causal link between Mr. Burns' grievance against CO Gicewicz and his termination as a mentor in Echo Mod.[71] Additionally, Defendant argues that Mr. Burns' termination did not chill his First Amendment activities, pointing to the grievances he continued to file following his termination. Finally, Defendant argues that Mr. Burns' termination and DOC policies considering the PREA Assessment in hiring decisions serve legitimate DOC goals.

The Court, having found that no causal link exists between Mr. Burns' protected activity and Superintendent Miranda's termination of his employment in Echo Mod, need not consider Defendant's additional arguments regarding the fourth and fifth factors of Mr. Burns' retaliation claim. Where, as here, there is "no genuine issue of material fact" as to an "element essential to the party's case," summary judgment is

---

[71] Docket 28 at 11–12.

*Burns v. Miranda*  Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment  Page 13
Case 3:20-cv-00227-JMK   Document 40   Filed 09/21/21   Page 13 of 16

appropriate.[72] However, Mr. Burns' Opposition to Defendants' Motion for Summary Judgment raises arguments not articulated in his own Motion for Summary Judgment that the Court will address in the interest of fully addressing Mr. Burns' filings.

Mr. Burns asserts in his Opposition that Superintendent Miranda necessarily was aware of his grievance of CO Gicewicz because, in her role as Acting Superintendent, "she is required to read the log" capturing incidents that occur in Echo Mod.[73] Mr. Burns asserts for the first time in his Opposition that he requested a copy of the log, and alleges that the Defendant would not provide it.[74] Mr. Burns also argues that the response given to his RFI seeking more information on why he was terminated is evidence of retaliation in that it was pro forma—indicating to Mr. Burns that no legitimate reason existed for his termination.[75]

Mr. Burns' allegations and interpretations of Superintendent Miranda's actions, without further factual support, do not constitute evidence that would create a disputed issue of material fact.[76] Similarly, Mr. Burns' discovery allegations are surprising in that they were not raised with any specificity in his previously filed Motion to Compel.[77] The Court finds that, even had Mr. Burns properly and successfully pursued a "pass-through log" and found evidence that Superintendent Miranda was to some extent aware

---

[72] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[73] Docket 34 at 4.
[74] *Id.*
[75] *Id.* at 4–5.
[76] *Manley v. Rowley*, 847 F.3d 705, 710–11 (9th Cir. 2017) ("We have refused to find a 'genuine issue' [as to a material fact] where the only evidence presented is 'uncorroborated and self-serving' testimony.")
[77] *See* Docket 33.

*Burns v. Miranda*  Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment  Page 14
Case 3:20-cv-00227-JMK   Document 40   Filed 09/21/21   Page 14 of 16

of his grievance against CO Gicewicz, undisputed evidence shows that it was not the primary or motivating factor for his termination.

The record reflects that the primary factor for terminating Mr. Burns was, instead, his PREA assessment. Per DOC policy, prison staff should consider PREA assessment results in regard to "placement assignments regarding work, housing and program assignments."[78] It appears that staff at SCCC failed to consider Mr. Burns' PREA assessment when assigning him the role of Echo Mod mentor in 2019.[79] As discussed above, based on conversation with Mr. Burns, the new Echo Mod supervisor looks up his record in ACOMS on March 26, 2020, and saw that he had been assessed as an "aggressor."[80] Mr. Burns points out, aptly, that SCCC staff should have considered the PREA assessment before making him a mentor, not after. However, this failure does not limit SCCC staff's ability to course correct and remove Mr. Burns from Echo Mod when they realized his PREA assessment made him unsuitable for the mentor position.

Moreover, even were the failures of SCCC in appropriately and timely assessing Mr. Burns and ensuring he was placed in an appropriate work assignment somehow a technical barrier to his termination, it remains Plaintiff's burden to plead and prove the "absence of legitimate correctional goals for the conduct of which he complains."[81] Mr. Burns has not proven, or even argued, that DOC policy limiting the

---

[78] Docket 24-11, DOC P&P 808.19 Sexual Abuse/Sexual Assault and Reporting Procedure.
[79] *See* Docket 24-3 at 3–4.
[80] *Id.* at 4.
[81] *Riley* 572 Fed. Appx. at 506 (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (quoting *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)).

*Burns v. Miranda*  Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment  Page 15
Case 3:20-cv-00227-JMK   Document 40   Filed 09/21/21   Page 15 of 16

work placement of inmates who are assessed as "aggressors" to ensure the safety of other inmates is not a legitimate correctional goal.[82]

## IV. CONCLUSION

Mr. Burns has failed to come forward in his response to Defendant's summary judgment motion with competent, admissible evidence to contravene Defendant's evidence that Mr. Burns was terminated from his position as a mentor in Echo Mod due to his PREA assessment results. His unsubstantiated and conclusory allegations fail to create a genuine issue of material fact sufficient to withstand summary judgment. For the reasons stated herein, the Court DENIES Mr. Burns' Motion for Summary Judgment at Docket 21 and GRANTS Superintendent Miranda's Motion for Summary Judgment at Docket 27.

IT IS SO ORDERED this 21st day of September, 2021, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

---

[82] Mr. Burns' allegations that other inmates are also aggressors but are allowed to work in Echo Mod do not go to the legitimacy of DOC's broader goal of maintaining the safety of inmates assigned to the mental health unit.

*Burns v. Miranda*     Case No. 3:20-cv-00227-JMK
Order Granting Defendant Summary Judgment     Page 16
Case 3:20-cv-00227-JMK    Document 40    Filed 09/21/21    Page 16 of 16